UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| JACQUELINE R. LARKIN,<br><br>　　　　　　　　Plaintiff,<br><br>　　v.<br><br>NANCY A. BERRYHILL, Deputy Commissioner of Social Security for Operations<br><br>　　　　　　　　Defendant. | NO.  C17-1689-BHS-JPD<br><br><br>REPORT AND RECOMMENDATION |

Plaintiff Jacqueline R. Larkin appeals the final decision of the Commissioner of the Social Security Administration ("Commissioner") that denied her application for Supplemental Security Income ("SSI") under Title XVI of the Social Security Act, 42 U.S.C. §§ 1381-83f, after a hearing before an administrative law judge ("ALJ").  For the reasons set forth below, the Court recommends that the Commissioner's decision be AFFIRMED.

I.　　　FACTS AND PROCEDURAL HISTORY

Plaintiff is a 29-year old-woman with an associate's degree.[1]  Administrative Record ("AR") at 38-39.  Her past work experience includes employment as a server and register clerk

---

[1] During the adjudicated period, Plaintiff pursued her bachelor's degree at the University of Washington, but eventually discontinued those studies.  *See, e.g.*, AR at 39, 462, 492, 516, 519, 522.

REPORT AND RECOMMENDATION - 1

in restaurants when she was a teenager. AR at 38-39. At the hearing, Plaintiff testified that she was last gainfully employed in 2007.[2] AR at 39.

In July 2014, Plaintiff protectively filed a claim for SSI payments, alleging an onset date of March 23, 2012.[3] AR at 160-65. Plaintiff asserts that she is disabled due to psoriasis, psoriatic arthritis, Raynaud's disease, spondylitis, attention deficit hyperactivity disorder, depression, and anemia. AR at 173.

The Commissioner denied Plaintiff's claim initially and on reconsideration. AR at 90-93, 97-99. Plaintiff requested a hearing, which took place on June 1, 2016. AR at 34-63. On July 15, 2016, the ALJ issued a decision finding Plaintiff not disabled and denied benefits based on his finding that Plaintiff could perform a specific job existing in significant numbers in the national economy. AR at 19-29. Plaintiff's administrative appeal of the ALJ's decision was denied by the Appeals Council, AR at 1-6, making the ALJ's ruling the "final decision" of the Commissioner as that term is defined by 42 U.S.C. § 405(g). On November 9, 2017, Plaintiff timely filed the present action challenging the Commissioner's decision. Dkt. 1, 6.

## II.    JURISDICTION

Jurisdiction to review the Commissioner's decision exists pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3).

## III.    STANDARD OF REVIEW

Pursuant to 42 U.S.C. § 405(g), this Court may set aside the Commissioner's denial of social security benefits when the ALJ's findings are based on legal error or not supported by substantial evidence in the record as a whole. *Bayliss v. Barnhart*, 427 F.3d 1211, 1214 (9th

---

[2] The record also indicates that she was working as a model before and during the adjudicated period, but Plaintiff did not report this work at the hearing and instead specifically denied working at all as an adult. *See, e.g.*, AR at 39, 270, 275, 318, 519.

[3] At the hearing, she amended her onset date to July 31, 2014. AR at 37.

REPORT AND RECOMMENDATION - 2

Cir. 2005). "Substantial evidence" is more than a scintilla, less than a preponderance, and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Magallanes v. Bowen*, 881 F.2d 747, 750 (9th Cir. 1989). The ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and resolving any other ambiguities that might exist. *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995). While the Court is required to examine the record as a whole, it may neither reweigh the evidence nor substitute its judgment for that of the Commissioner. *Thomas v. Barnhart*, 278 F.3d 947, 954 (9th Cir. 2002). When the evidence is susceptible to more than one rational interpretation, it is the Commissioner's conclusion that must be upheld. *Id.*

## IV.   EVALUATING DISABILITY

As the claimant, Ms. Larkin bears the burden of proving that she is disabled within the meaning of the Social Security Act (the "Act"). *Meanel v. Apfel*, 172 F.3d 1111, 1113 (9th Cir. 1999) (internal citations omitted). The Act defines disability as the "inability to engage in any substantial gainful activity" due to a physical or mental impairment which has lasted, or is expected to last, for a continuous period of not less than twelve months. 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A). A claimant is disabled under the Act only if her impairments are of such severity that she is unable to do her previous work, and cannot, considering her age, education, and work experience, engage in any other substantial gainful activity existing in the national economy. 42 U.S.C. §§ 423(d)(2)(A); *see also Tackett v. Apfel*, 180 F.3d 1094, 1098-99 (9th Cir. 1999).

The Commissioner has established a five step sequential evaluation process for determining whether a claimant is disabled within the meaning of the Act. *See* 20 C.F.R. §§ 404.1520, 416.920. The claimant bears the burden of proof during steps one through four. At

step five, the burden shifts to the Commissioner. *Id.* If a claimant is found to be disabled at any step in the sequence, the inquiry ends without the need to consider subsequent steps. Step one asks whether the claimant is presently engaged in "substantial gainful activity." 20 C.F.R. §§ 404.1520(b), 416.920(b).[4] If she is, disability benefits are denied. If she is not, the Commissioner proceeds to step two. At step two, the claimant must establish that she has one or more medically severe impairments, or combination of impairments, that limit her physical or mental ability to do basic work activities. If the claimant does not have such impairments, she is not disabled. 20 C.F.R. §§ 404.1520(c), 416.920(c). If the claimant does have a severe impairment, the Commissioner moves to step three to determine whether the impairment meets or equals any of the listed impairments described in the regulations. 20 C.F.R. §§ 404.1520(d), 416.920(d). A claimant whose impairment meets or equals one of the listings for the required twelve-month duration requirement is disabled. *Id.*

When the claimant's impairment neither meets nor equals one of the impairments listed in the regulations, the Commissioner must proceed to step four and evaluate the claimant's residual functional capacity ("RFC"). 20 C.F.R. §§ 404.1520(e), 416.920(e). Here, the Commissioner evaluates the physical and mental demands of the claimant's past relevant work to determine whether she can still perform that work. 20 C.F.R. §§ 404.1520(f), 416.920(f). If the claimant is able to perform her past relevant work, she is not disabled; if the opposite is true, then the burden shifts to the Commissioner at step five to show that the claimant can perform other work that exists in significant numbers in the national economy, taking into consideration the claimant's RFC, age, education, and work experience. 20 C.F.R. §§

---

[4] Substantial gainful activity is work activity that is both substantial, i.e., involves significant physical and/or mental activities, and gainful, i.e., performed for profit. 20 C.F.R. § 404.1572.

REPORT AND RECOMMENDATION - 4

404.1520(g), 416.920(g); *Tackett*, 180 F.3d at 1099, 1100.  If the Commissioner finds the claimant is unable to perform other work, then the claimant is found disabled and benefits may be awarded.

## V. DECISION BELOW

On July 15, 2016, the ALJ issued a decision finding the following:

1. The claimant has not engaged in substantial gainful activity since July 31, 2014, the application date.

2. The claimant has the following severe impairments: psoriasis, ankylosing spondylitis of thoracic spine, fibromyalgia, depression and anxiety.

3. The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1.

4. After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform the full range of light work as defined in 20 CFR 416.967(b).  The claimant can perform simple, routine tasks and follow short, simple instructions.  The claimant can perform work that needs little or no judgment and can perform simple duties that can be learned on the job in a short period of less than thirty days.  The claimant can respond appropriately to supervision, but should not be required to work in close coordination with coworkers where teamwork is required.  The claimant can deal with occasional changes in the work environment.  The claimant has some difficulty working directly with the public but could work in jobs that require only occasional exposure to or interaction with the general public.

5. The claimant has no past relevant work.

6. The claimant was born on XXXXX, 1989 and was 24 years old, which is defined as a younger individual age 18-49, on the date the application was filed.[5]

7. The claimant has at least a high school education and is able to communicate in English.

---

[5] The actual date is deleted in accordance with Local Rule CR 5.2, W.D. Washington.

REPORT AND RECOMMENDATION - 5

8.     Transferability of job skills is not an issue because the claimant does not have past relevant work.

9.     Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform.

10.     The claimant has not been under a disability, as defined in the Social Security Act, since July 31, 2014, the date the application was filed.

AR at 21-29.

## VI.    ISSUES ON APPEAL

The principal issues on appeal are:

1.     Whether the ALJ erred in finding Plaintiff did not meet or equal a listing at step three;

2.     Whether the ALJ erred in failing to develop the record; and

3.     Whether the ALJ erred in assessing the medical opinion evidence.

Dkt. 14 at 1.

## VII.    DISCUSSION

A.    <u>The ALJ did not err at step three.</u>

Plaintiff contends that her inflammatory arthritis meets or equals Listing 14.09D, and that the ALJ erred in finding otherwise at step three.

At step three, the ALJ considers whether one or more of a claimant's impairments meet or medically equal an impairment listed in Appendix 1 to Subpart P of the regulations. "The listings define impairments that would prevent an adult, regardless of his age, education, or work experience, from performing *any* gainful activity, not just 'substantial gainful activity.'" *Sullivan v. Zebley*, 493 U.S. 521, 532 (1990) (emphasis in original; citations omitted).

Plaintiff bears the burden of proof at step three. *Bowen v. Yuckert*, 482 U.S. 137, 146 n.5 (1987). A mere diagnosis does not suffice to establish disability. *Key v. Heckler*, 754 F.2d 1545, 1549-50 (9th Cir. 1985). "'[An impairment] must also have the *findings* shown in the

Listing of that impairment.'" *Id*. at 1549-50 (quoting § 404.1525(d); emphasis added in *Key*). To meet a listing, an impairment "must meet *all* of the specified medical criteria." *Sullivan v. Zebley*, 493 U.S. 521, 530 (1990) (emphasis in original). "To equal a listed impairment, a claimant must establish symptoms, signs and laboratory findings 'at least equal in severity and duration' to the characteristics of a relevant listed impairment[.]" *Tackett v. Apfel,* 180 F.3d 1094, 1099 (9th Cir. 1999); § 416.926 (a). *See also Sullivan*, 493 U.S. at 531(to establish equivalency, claimant "must present medical findings equal in severity to *all* the criteria" for the listing).

The equivalence finding must be based on medical evidence. *Lewis v. Apfel*, 236 F.3d 503, 514 (9th Cir. 2001). A showing that the "overall functional impact" of the claimant's impairment is as severe as a listed impairment does not suffice to establish equivalence. *Kennedy v. Colvin*, 738 F.3d 1172, 1176 (9th Cir. 2013) (citing *Sullivan*, 493 U.S. at 531). "The reason for this is clear. Listed impairments are purposefully set at a high level of severity because 'the listings were designed to operate as a presumption of disability that makes further inquiry unnecessary.'" *Id*. (quoting *Sullivan*, 493 U.S. at 532).

Listing 14.09D, which Plaintiff contends she meets or equals, sets forth one set of criteria for inflammatory arthritis at the listing level:

    1.    Repeated episodes of inflammatory arthritis

    2.    With at least two constitutional symptoms or signs: severe fatigue, fever, malaise, or involuntary weight loss; and

    3.    One of the following, at the marked level, due to symptoms caused by the inflammatory arthritis:
        (A) Limitation of activities of daily living,
        (B) Limitation in maintaining social functioning, or
        (C) Limitation in completing tasks in a timely manner due to deficiencies in concentration, persistence, and pace.

20 C.F.R. Pt. 404, Subpt. P, App. 1, §§ 14.00I, 14.09D.

The ALJ found that Plaintiff did not satisfy any of the subsections of Listing 14.09, and with respect to Listing 14.09D, found that Plaintiff did not have "repeated manifestations of inflammatory arthritis." AR at 21-22.

Plaintiff points to medical findings, specifically evidence of joint pain, as evidence that she suffered repeated episodes of inflammatory arthritis. Dkt. 14 at 8. She also points to treatment notes mentioning severe fatigue, fever, and malaise, to argue that she satisfies Listing 14.09D's second criterion. Dkt. 14 at 9. Finally, she points to a psychological opinion describing concentration, persistence, and pace ("CPP") deficits as evidence that when her mental conditions are combined with her physical conditions, she meets or equals the third criterion as well. *Id*.

Even if Plaintiff is correct as to the first and second Listing 14.09C criteria, she has not shown that she meets or equals the third criterion, because she has not pointed to medical evidence showing that she has marked CPP deficits. She points to evidence[6] suggesting that her mental impairments cause some degree of CPP deficits, but the ALJ found those deficits to be only moderate, rather than marked. AR at 22. The only medical opinions specifying the degree of Plaintiff's CPP deficits indicate that they are moderate. *See* AR at 72, 85-86.

Thus, even assuming Plaintiff's physical and mental impairments *could* be combined to medically equal Listing 14.09D, she has not shown that they do so here. Because she has not shown that she does meet or equal Listing 14.09D, she has not shown harmful step-three error. *See, e.g.*, *Browning v. Astrue*, 2010 WL 1511667, at *6 (D. Ariz. Apr. 15, 2010) (". . . [E]ven if the ALJ's discussion at step three was insufficient as it relates to either the heart or spinal impairments, this error was harmless because . . . the record is devoid of evidence establishing

---

[6] Furthermore, the ALJ discounted the evidence Plaintiff relies on to establish her degree of functional impairment. *See* AR at 26-27.

REPORT AND RECOMMENDATION - 8

that [the claimant's] impairments met or equaled any listed impairment, and [the claimant] points the Court to none.").

B.  **The ALJ did not err in failing to develop the record.**

In general, a claimant bears an obligation to "furnish medical and other evidence[.]" 20 C.F.R. § 404.1512 (a), (c). "[A]n ALJ's duty to develop the record further is triggered only when there is ambiguous evidence or when the record is inadequate to allow for proper evaluation of the evidence." *Mayes v. Massanari*, 276 F.3d 453, 459-60 (9th Cir. 2001).

Plaintiff argues that the record in this case is inadequate because it does not contain any treatment notes from her psychiatrists and psychotherapists,[7] and argues that the ALJ had an affirmative duty to request these records because she was chronically mentally ill. Dkt. 14 at 3-4.

As authority for her position, Plaintiff relies on *DeLorme v. Sullivan*, 924 F.3d 841 (9th Cir. 1991); and *Dervin v. Astrue*, 407 Fed. Appx. 154, 156 (9th Cir. 2010).[8] *DeLorme* holds that an ALJ must gather all records of past treatment, relying on Social Security Ruling ("SSR") 83-15. *See* 924 F.3d at 848. *Dervin* cites *DeLorme*'s reliance on SSR 83-15 as well. 407 Fed. Appx. at 156. SSR 83-15 has been rescinded and not replaced, however. *See* 1983 WL 31245 (Jan. 1, 1983). Thus, Plaintiff cites *DeLorme* and *Dervin* for a proposition based on an SSR that is not currently in effect.

---

[7] At the hearing, Plaintiff testified that although counseling had been recommended, she did not wish to pursue therapy until after she moved to Ellensburg, to avoid wasting her time and her therapist's time. AR at 52.
[8] Plaintiff also cites cases for the proposition that once a record has been found inadequate, a claimant no longer bears the burden of presenting evidence. Dkt. 16 at 1-2. But here, the record was not found inadequate, and thus these cases do not support Plaintiff's argument.

REPORT AND RECOMMENDATION - 9

Furthermore, the facts of both *DeLorme* and *Dervin* are distinguishable from the facts of this case. The evidence in *DeLorme* suggested that a claimant's longstanding depression became disabling at some point, but the record did not contain any evidence showing that it became disabling before the claimant's date last insured. 924 F.2d at 848. Because the timing of the disability onset was dispositive to the ALJ's disability determination, the Ninth Circuit held that the ALJ had a duty to obtain all medical records be obtained for determining the onset date. *Id*. This case is distinguishable from *DeLorme* because there is no evidence (beyond counsel's speculation) that the omitted treatment notes (assuming they exist) are dispositive to the ALJ's disability determination.

*Dervin* is similarly distinguishable. In that case, a treating psychiatrist referenced other treatment notes from his practice group in writing an opinion that the claimant was mentally disabled, which led the Ninth Circuit to conclude that the ALJ erred in discounting the treating psychiatrist's opinion because it was informed only by the two visits he had with the claimant, rather than representing a long history of treatment at that practice group. 407 Fed. Appx. at 157. But in this case, the ALJ did not rely on a dearth of treatment records to discount any medical opinions.

In this case, treatment records do reference other treatment records not contained in the administrative record, but the content of the treatment records does not suggest that determination-dispositive records have been omitted. *See* AR at 273 (a November 2013 note referencing past treatment by an unnamed provider in another city, predating the adjudicated period); 290 (April 2014 note referencing an unnamed psychiatrist's medication changes, predating the adjudicated period), 328 (a September 2014 notation that Plaintiff reported seeing an unnamed ARNP who prescribed Effexor a month earlier); 434-35 (a treatment note indicating that the record "may not contain the entire record from UW Medicine –

REPORT AND RECOMMENDATION - 10

Washington), 516 (referencing a future appointment with a psychiatrist Jason MacLurg, M.D.), 457 (referencing a new treatment relationship with a psychiatrist James A. Salmon, M.D.), 487-88 (same).[9] It appears that there could be more records than contained in the administrative record, but there is nothing other than counsel's argument in the briefing to suggest that these records exist and contain information that would "support[] the rejected opinions." Dkt. 14 at 5.

Furthermore, as the Commissioner notes, counsel did not raise this issue to the ALJ at the hearing, nor did counsel submit any new evidence to the Appeals Council. Dkt. 15 at 2-3. Plaintiff also did not present the purportedly omitted records to this Court, in an effort to demonstrate that the new evidence was material to the disability determination. Under these circumstances, counsel's speculation as to the existence of outstanding material records is not sufficient to show that the record before the ALJ was inadequate and that the ALJ therefore had a duty to further develop the record.

C. <u>The ALJ did not err in assessing the medical opinion evidence.</u>

Plaintiff contends that the ALJ erred in discounting medical opinions, each of which the Court will address in turn.

1. *Legal standards*

As a matter of law, more weight is given to a treating physician's opinion than to that of a non-treating physician because a treating physician "is employed to cure and has a greater opportunity to know and observe the patient as an individual." *Magallanes*, 881 F.2d at 751; *see also Orn v. Astrue*, 495 F.3d 625, 631 (9th Cir. 2007). A treating physician's opinion,

---

[9] Plaintiff's written consent is also required by one of her psychotherapists in order to allow her therapy notes to be released, and thus the ALJ would not have been able to obtain the notes on his own in any event. *See* AR at 515, 518.

REPORT AND RECOMMENDATION - 11

however, is not necessarily conclusive as to either a physical condition or the ultimate issue of disability, and can be rejected, whether or not that opinion is contradicted. *Magallanes*, 881 F.2d at 751. If an ALJ rejects the opinion of a treating or examining physician, the ALJ must give clear and convincing reasons for doing so if the opinion is not contradicted by other evidence, and specific and legitimate reasons if it is. *Reddick v. Chater*, 157 F.3d 715, 725 (9th Cir. 1988). "This can be done by setting out a detailed and thorough summary of the facts and conflicting clinical evidence, stating his interpretation thereof, and making findings." *Id.* (citing *Magallanes*, 881 F.2d at 751). The ALJ must do more than merely state his/her conclusions. "He must set forth his own interpretations and explain why they, rather than the doctors', are correct." *Id.* (citing *Embrey v. Bowen*, 849 F.2d 418, 421-22 (9th Cir. 1988)). Such conclusions must at all times be supported by substantial evidence. *Reddick*, 157 F.3d at 725.

The opinions of examining physicians are to be given more weight than non-examining physicians. *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1995). Like treating physicians, the uncontradicted opinions of examining physicians may not be rejected without clear and convincing evidence. *Id.* An ALJ may reject the controverted opinions of an examining physician only by providing specific and legitimate reasons that are supported by the record. *Bayliss,* 427 F.3d at 1216.

Opinions from non-examining medical sources are to be given less weight than treating or examining doctors. *Lester*, 81 F.3d at 831. However, an ALJ must always evaluate the opinions from such sources and may not simply ignore them. In other words, an ALJ must evaluate the opinion of a non-examining source and explain the weight given to it. SSR 96-6p, 1996 WL 374180, at *2. Although an ALJ generally gives more weight to an examining doctor's opinion than to a non-examining doctor's opinion, a non-examining doctor's opinion

REPORT AND RECOMMENDATION - 12

may nonetheless constitute substantial evidence if it is consistent with other independent evidence in the record.  *Thomas*, 278 F.3d at 957; *Orn*, 495 F.3d at 632-33.

      2.     *Thomas Jansen, D.O.*

Dr. Jansen, Plaintiff's treating physician, completed a DSHS form opinion in September 2014, describing Plaintiff's symptoms and opining that she was unable to meet the demands of sedentary work due to her ankylosing spondylitis.  AR at 322-26.

The ALJ found that Dr. Jansen's opinion was inconsistent with Plaintiff's "relatively unremarkable examinations[.]"  AR at 26.  The ALJ also found that Dr. Jansen's form opinion was unexplained, because it was not clear why Plaintiff's limitations left her unable to meet the demands of sedentary work.  *Id.*

The ALJ's characterization of Plaintiff's examinations as "unremarkable" is reasonable.  Dr. Jansen's own examinations of Plaintiff referenced few, if any, severe physical abnormalities prior to 2015.  AR at 264-76, 311-21.  In January 2014, Plaintiff requested that Dr. Jansen authorize a disabled parking pass for her, and Dr. Jansen declined, indicating that he "cannot find an appropriate category that would be justified to allow her to get a parking disabled pass."  AR at 320.  Between that appointment and the appointment eight months later when Dr. Jansen completed the DSHS form opinion at issue here, Dr. Jansen did not document any severe physical symptoms.  Because Dr. Jansen's treatment notes are inconsistent with the severity of the limitations he described in his opinion, and he did not explain any other basis for his opinion, the ALJ did not err in discounting Dr. Jansen's opinion as inconsistent with the record.  *See Tommasetti v. Astrue*, 533 F.3d 1035, 1041 (9th Cir. 2008) (not improper to reject an opinion presenting inconsistencies between the opinion and the medical record).

      3.     *Brenda Havellana*, *Ph.D.*

Dr. Havellana examined Plaintiff in September 2014 and completed a DSHS

psychological form opinion, without reviewing any records. AR at 328-35. Dr. Havellana described memory and concentration deficits, and rated Plaintiff's limitations as severe in several categories. AR at 330-32.

The ALJ assigned "little weight" to Dr. Havellana's opinion, finding that the opinion was based on non-credible self-report. AR at 27. The ALJ noted that Dr. Havellana described only memory and concentration deficits, but that Dr. Havellana listed significant restrictions in other categories, such as setting goals, communicating, and maintaining a work schedule. *Id*. The ALJ also found that Dr. Havellana did not explain her findings. *Id*.

Much of Dr. Havellana's opinion report documents Plaintiff's statements, rather than clinical findings. *See* AR at 328-29. Plaintiff does not dispute that Dr. Havellana's mental status examination ("MSE") was mostly normal, except for memory and concentration problems, but she contends that the severe restrictions described by Dr. Havellana could have been based on the self-reported limitations rather than the MSE findings, and therefore they were neither inconsistent nor unexplained. Dkt. 14 at 16-17. But the ALJ discounted Plaintiff's self-report, and Plaintiff does not challenge those findings on appeal. Thus, if Dr. Havellana relied on Plaintiff's self-reported symptoms in reaching her conclusions, it would not bolster the probative value of her opinion. *See Bray v. Comm'r of Social Sec. Admin.*, 554 F.3d 1219, 1228 (9th Cir. 2009) ("As the ALJ determined that Bray's description of her limitations was not entirely credible, it is reasonable to discount a physician's prescription that was based on those less than credible statements."). Accordingly, the ALJ did not err in discounting Dr. Havellana's opinion as unsupported by objective evidence and unexplained. *See Tonapetyan v. Halter*, 242 F.3d 1144, 1149 (9th Cir. 2001) ("The ALJ rejected Dr. Ngaw's opinion for lack of objective support, noting that Dr. Ngaw relied only on Tonapetyan's subjective complaints and on testing within Tonapetyan's control. Because the present record

REPORT AND RECOMMENDATION - 14

supports the ALJ in discounting Tonapetyan's credibility, as discussed above, he was free to disregard Dr. Ngaw's opinion, which was premised on her subjective complaints.").

4. *Steven Johansen, Ph.D.*

Dr. Johansen reviewed Dr. Havellana's opinion report to determine Plaintiff's eligibility for state benefits. AR at 336-40. The ALJ found that Dr. Johansen's assessment crediting Plaintiff's anxiety and depression diagnoses was consistent with the record. AR at 27. The ALJ noted that Dr. Johansen did not conduct his own independent evaluation, however. *Id*.

Plaintiff cites a regulation indicating that non-examining psychologists can be experts in disability adjudication, suggesting that the ALJ erred in discounting Dr. Johansen's opinion because he did not examine Plaintiff. Dkt. 14 at 17. Plaintiff cites a regulation that does not include the language she quotes; the regulation she may have intended to reference, however, pertains to State agency psychological consultants who contract with the Social Security Administration, not DSHS examiners such as Dr. Johansen. *See* 20 C.F.R. § 416.913a(b)(1) (providing that ALJs must consider State agency opinions "because our Federal or State agency medical or psychological consultants are highly qualified and experts in Social Security disability evaluation"). In any event, the applicable regulations indicate that the ALJ did not err in finding that a non-examining provider's opinion was entitled to less weight because he did not examine the claimant. *See, e.g.*, 20 C.F.R. § 416.927(c)(1) ("Generally, we give more weight to the medical opinion of a source who has examined you than to the medical opinion of a medical source who has not examined you.").

5. *State agency consultants*

The ALJ gave "partial weight" to the State agency consultants, finding that even if Plaintiff was physically limited to sedentary work, she could nonetheless perform jobs existing

in significant numbers in the national economy. AR at 27. The ALJ also found the State agency psychological opinions to be "fairly consistent" with the record, and indicating that Plaintiff could perform at least simple, routine tasks and socialize to "a limited degree." AR at 27-28.

Plaintiff argues that the ALJ erred in failing to account for all limitations identified by the psychological consultants, and in failing to explain why those limitations were rejected. Dkt. 14 at 17-18. Specifically, Plaintiff notes that the psychological consultants indicated that she had a moderate limitation in her ability to complete a normal workweek and workday. *See* AR at 72, 85-86. That is true, but the consultants went on to opine that despite this moderate limitation, Plaintiff "retains the ability to follow through with routine tasks with reasonable CPP." *Id*. The consultants also opined that Plaintiff was not disabled. AR at 74, 88. Thus, when read as a whole, the State agency opinions do not describe any limitations that are more restrictive than found by the ALJ, and thus the ALJ was not required to explain why he rejected any portion of those opinions because he did not actually reject them. *See* SSR 96-8p, 1996 WL 374184, at *7 (Jul. 2, 1996) ("If the RFC assessment conflicts with an opinion from a medical source, the adjudicator must explain why the opinion was not adopted.").

## VIII.   CONCLUSION

The role of this Court is limited. As noted above, the ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and resolving any other ambiguities that might exist. *Andrews*, 53 F.3d at 1039. When the evidence is susceptible to more than one rational interpretation, it is the Commissioner's conclusion that must be upheld. *Thomas,* 278 F.3d at 954. While it may be possible to evaluate the evidence as Plaintiff suggests, it is not possible to conclude that Plaintiff's interpretation is the only rational interpretation.

For the foregoing reasons, the Court recommends that this case be AFFIRMED. A proposed order accompanies this Report and Recommendation.

Objections to this Report and Recommendation, if any, should be filed with the Clerk and served upon all parties to this suit by no later than **July 6, 2018**. Failure to file objections within the specified time may affect your right to appeal. Objections should be noted for consideration on the District Judge's motion calendar for the third Friday after they are filed. Responses to objections may be filed within **fourteen (14)** days after service of objections. If no timely objections are filed, the matter will be ready for consideration by the District Judge on **July 13, 2018**.

This Report and Recommendation is not an appealable order. Thus, a notice of appeal seeking review in the Court of Appeals for the Ninth Circuit should not be filed until the assigned District Judge acts on this Report and Recommendation.

DATED this 22nd day of June, 2018.

*James P. Donohue*

JAMES P. DONOHUE
United States Magistrate Judge

REPORT AND RECOMMENDATION - 17